UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| ADAM KEYSE, *et al.* | Case No. 1:21-cv-01737 |
| Plaintiffs | Judge Pamela A. Barker |
| *v.* | |
| BRIGHTEDGE TECHNOLOGIES, INC. | |
| Defendant | |

**UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT**

**I.      INTRODUCTION & RELIEF REQUESTED**

Defendant BrightEdge Technologies, Inc., employed Plaintiffs Adam Keyse, Adam Mitro, Charles Berg, and Drew Perrin as "Sales Development Representatives."[1]  BrightEdge classified SDRs as *non-exempt* from the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and SDRs worked substantial overtime hours.[2]  BrightEdge paid SDRs for "clocked" overtime hours, but when it calculated the *regular rate* for purposes of computing the *overtime rate* at which to compensate the overtime hours of work, the plaintiffs allege that the company did not include the non-discretionary sales commissions SDRs often earned.[3,4]  The plaintiffs also allege that SDRs worked *off-the-clock* hours for which they were not compensated.[5]

---

[1] *See* Complaint (Doc. 1), ¶¶22, 29, 36, 43, 51, 53, 103.

[2] *Id.* at ¶¶1, 7, 23-24, 30-31, 37-38, 44-45, 53, 55, 57-58, 82-83, 101.

[3] *Id.* at ¶¶10, 25, 32, 37, 46, 60, 62, 88.

[4] The *regular rate* is "a rate per hour" that "is determined by dividing [the employee's] total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."  29 C.F.R. § 778.109; *accord* 29 C.F.R. § 778.117 ("Commissions … are payments for hours worked and must be included in the regular rate.").  The *overtime rate* is "a rate not less than one and one-half times the regular rate…" 29 C.F.R. § 778.107.

[5] *See* Complaint (Doc. 1) at ¶¶4-9, 83-85, 89.

1

Therefore, the plaintiffs filed this action under the FLSA on behalf of themselves and a proposed collective of all other SDRs employed by the company in the United States within a three-year period (*i.e.,* the longest applicable limitations period) prior to the filing of the complaint through the date of final judgment.[6] BrightEdge filed an answer that denied the factual and legal bases of the plaintiffs' claims as well as the propriety of certifying those claims for a class or collective action.[7] But the parties jointly agreed to mediate the case and selected one of the foremost FLSA mediators in the country, Lynn Cohn of Northwestern's Pritzker School of Law.

The parties postponed the initial mediation date to allow BrightEdge to produce substantial and detailed information about the compensation, clocked hours, and tenures of 230 members of the putative collective action.[8] By the conclusion of the January 19 mediation, the parties had arrived at an agreement-in-principle on the essential terms of a collective-wide settlement, the details of which were further negotiated to arrive at a final and comprehensive written settlement agreement and release. The plaintiffs now move the Court to approve the settlement as follows:

1. Approve the FLSA settlement according to the terms in the *Settlement Agreement,* which is being submitted as **Exhibit 1**;

2. Approve the *Settlement Notice*, which is being submitted as **Exhibit 2**;

3. Appoint CPT Group as Settlement Administrator, per the terms of the *Settlement Agreement*; and

4. Approve the plaintiffs' attorney's fees, costs, and service awards, which are discussed in **Section IV & V** below and supported by the *Declaration of Lead Counsel,* which is being submitted as **Exhibit 3**.

II.   **APPROVAL OF THE PROPOSED SETTLEMENT**

The proposed settlement would create a common fund of $725,000 for (i) the payment of claims to the approximately 230 members of the putative collective who cash their distribution checks and thereby release any wage-and-hour claims against BrightEdge, (ii) the payment of

---

[6] *Id.* at ¶¶1, 12, 14, 16, 51, 55, 57-68, 80-108; *see also id.* at ¶¶27, 34, 41, 48, and Docs. 1-3, 1-4, 1-5, 1-6 (each plaintiff signed a written consent to join the FLSA action). The plaintiffs also brought claims under the Ohio state law analogue to the FLSA, which has a two-year limitations period; these claims will also be resolved by this proposed settlement. *Id.* at ¶¶1, 17, 69-79, 109-123; *see also* O.R.C. § 4111.01 *et seq.*

[7] *See generally* Answer (Doc. 6), *especially* ¶57 and Affirmative Defenses Nos. 1 through 40.

[8] *See generally* Joint Motion to Continue Case Management Conference (Doc. 9).

reasonable attorney's fees equal to one-third of the common fund, (iii) the payment of plaintiffs' litigation costs, including the costs of notice and administration of the settlement, and (iv) service awards to the four lead plaintiffs, who are also providing BrightEdge with general releases.[9]

### A. The FLSA's One-Step Approval Process & Standard for Approval

In the Sixth Circuit, and across the country, a one-step approval process is typical and favored in FLSA settlements.[10] Unlike a class action under Federal Rule of Civil Procedure 23, which requires class members to *opt-out* to avoid judgment on their claims, a collective action under Section 16(b) of the FLSA requires workers to *opt-in* to the case—and a failure to exercise that option "does not prevent their bringing their own suits at a later date"—such that approval of an FLSA settlement does not implicate the due-process concerns at issue in a Rule 23 settlement.[11] Consistent with that, under the terms of the Settlement Agreement, all putative collective members will be mailed settlement checks with a notice that explains their options – opt into the case by cashing their settlement check or decline to join the case and maintain their right to bring their own action by not cashing the settlement check.

Therefore, once the Court has determined that a *bona fide* dispute existed between the parties, and which was put at issue in the litigation, the Court evaluates whether a proposed settlement of that dispute is fair and reasonable in light of the following factors: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; and (5) the public interest in

---

[9] *See* Ex. 1, Settlement Agreement, Sections 3 & 4.

[10] *See, e.g., Edwards v. City of Mansfield,* 2016 WL 2853619, at *3-4 (N.D. Ohio May 16, 2016); *Bradford v. Legacy Health Servs.,* 2014 WL 7185453, at *2 (N.D. Ohio Dec. 16, 2014); *Schneider v. Goodyear Tire & Rubber Co.,* 2014 WL 2579637, at *2-3 (N.D. Ohio June 9, 2014); *see also Prena v. BMO Fin. Corp.,* 2015 WL 234494, at *1 (N.D. Ill. May 15, 2015); *Bravo v. 57th Rest. Assoc. LLC,* 2105 WL 1283659, at *1 (S.D.N.Y. April 9, 2015); *Bozak v. FedEx Group Package Sys., Inc.,* 2014 WL 3778211, at *2 (D. Conn. July 31, 2014); *Powell v. Lakeside Behavioral Healthcare, Inc.,* 2011 WL 5855516, at *1 (M.D. Fla. Nov. 22, 2011).

[11] *See McKenna v. Champion Int'l Corp.,* 747 F.2d 1211, 1213 (8th Cir. 1984) (abrogated on other grounds by *Hoffman-LaRoche Inc. v. Sperling,* 493 U.S. 165 (1989)).

3

settlement.[12] Where the proposed settlement reflects a reasonable compromise over contested issues, it should be approved.[13]

      **B.    This Litigation Arises from a Bona Fide Dispute between the Parties**

The dispute between the parties was manifold, covering every aspect of the litigation. First, under *Canaday v. Anthem Companies, Inc.,*[14] BrightEdge might have argued that the approximately 140 SDRs who worked in states other than Ohio—New York, California, and Illinois—were outside the Court's jurisdiction. Thus, a settlement which includes these out-of-state employees (60% of the collective) resolves this major jurisdictional dispute.

Moreover, BrightEdge would have argued that claims are only timely for two years prior to an SDR opting into the case, rather than three years prior to the filing of the *Complaint*.[15] Thus, a settlement which covers all SDRs dating back to three years prior to the complaint's filing resolves this critical statute-of-limitations dispute.

Next, BrightEdge would have fiercely disputed the certification of an off-the-clock claim, which courts often see as more difficult to certify since they turn on undocumented experiences of employees.[16] Thus, a settlement which provides significant compensation of the off-the-clock claim on a class-wide basis resolves this real certification dispute.

Next, BrightEdge would have asserted a defense on the merits of the off-the-clock claim based on the data collected by SalesForce, the platform SDRs used for work, which shows activity on the system. From this data, BrightEdge would have argued that all hours SDRs actually worked were properly credited and paid. Thus, a settlement resolves the factual dispute between what

---

[12] *See, e.g., Rotuna v. West Customer Mngmt. Grp., LLC,* 2010 WL 2490989, at *5 (N.D. Ohio June 15, 2010); *Schneider,* 2014 WL 2579637, at *2; *Bradford,* 2014 WL 718583, at *2; *see also Crawford v. Lexington-Fayette Urban Cty. Gov't.,* 2008 WL 4724499, at *3 (E.D. Ky. Oct. 2008).

[13] *See Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1354 (11th Cir. 1982).

[14] 9 F.4th 392 (6th Cir. 2021).

[15] *See, e.g., Sprague v. Universal Transportation Sys. LLC,* S.D. Ohio No. 1:18-cv-165 (Doc. 39, Feb. 23, 2020).

[16] *See, e.g., Triggs v. Lowe's Ctrs., Inc.,* 2014 U.S. Dist. LEXIS 115775, at *12 (N.D. Ohio Aug. 19, 2014); *see also, e.g., Pacheco v. Boar's Head Provision, Co.,* 671 F. Supp. 2d 957, 966 (W.D. Mich. 2009); *White v. Baptist Mem'l Health Care Corp.,* 2011 U.S. Dist. LEXIS 52928, *9 (W.D. Tenn. May 17, 2011), *aff'd* 699 F.3d 869 (6th Cir. 2012).

SDRs report about their off-the-clock work activities and the company's assertion that the system data recorded all work activity.

Next, BrightEdge would have argued that the damages for the regular-rate claim (*i.e.,* the failure to include commissions when calculating the overtime rate for those hours that were clocked, credited, and paid) are calculated on a *half-time* basis under 29 C.F.R. § 778.119, rather than a *time-and-a-half* basis under § 778.107. BrightEdge also would have argued that it paid SDRs more overtime than mandated by the FLSA, thereby creating an offset against any damages recovered by the putative collective under 29 U.S.C. § 207(h) and 29 C.F.R. § 778.421. Thus, a settlement which resolves these damage calculation disputes is in the interests of the parties.

In sum, the parties were engaged in a substantive and adversarial dispute on standing, certification, merits, and damages at issue in the litigation, such that their "divergent views of the facts and the law present bona fide disputes that, had the parties not reached settlement, would have necessitated resolution by the Court and/or a jury," and, probably, by the Court of Appeals.[17]

### C. The Settlement Is Fair and Reasonable

The settlement recovers **all** of the allegedly unpaid overtime claimed by the plaintiffs on the regular-rate claim, which is *per se* reasonable under any standard.[18,19] Moreover, the settlement recovers several hours of off-the-clock time per workweek.[20] On a per capita basis (*i.e.,* proposed settlement divided by number of possible claimants), the gross amount of recovery

---

[17] *Bradford,* 2014 WL 7184553, at *3; *accord Sharier v. Top of the Viaduct, LLC,* 2017 WL 961029, at *2 (N.D. Ohio March 13, 2017); *Hedglin v. Maxim Healthcare Servs., Inc.,* 2016 WL 6248317, at *1 (N.D. Ohio Oct. 26, 2016); *Schneider,* 2014 WL 2579637, at *2; *Rotuna,* 2010 WL 2490989, at *5.

[18] *See Dillworth v. Case Farms Processing, Inc.,* 2010 WL 776933, at *6 (N.D. Ohio March 8, 2010); *Castillo v. Morales, Inc.,* 2015 WL 13021899, at *5 (S.D. Ohio Dec. 22, 2015).

[19] Under the time-and-a-half calculation, the best-day damages would have been about $465,000; under the half-time calculation, they would have been about $154,000. These calculations do not account for BrightEdge's offset arguments, which would reduce these figures.

[20] Under plaintiffs' own calculations, if every SDR was paid one hour of off-the-clock work per workweek, the damages would total about $270,000; two hours per week would be about $540,000. Thus, depending on how much of the $725,000 settlement is credited to the regular-rate claim (*i.e.,* between $154,000 and $465,000), between 1 and 2.25 hours of off-the-clock time per week are being compensated by way of the proposed settlement.

5

averages $3,152.17, which is well within the range of similar FLSA settlements.[21] Indeed, assuming the requested fees and costs are approved, and that approximately 230 members opt-in to the settlement, the average per capita recovery will be $2,017.59, which is well within the range of FLSA overtime settlements[22]—and this is a *non-reversionary* settlement in which any funds unclaimed by SDRs who choose not to opt-in will be *re-distributed* (on a proportionate basis) to those SDRs who did opt-in, thus increasing their recoveries.

### 1. There is no risk that the settlement was achieved by way of fraud or collusion.

As an initial matter, "courts presume the absence of fraud or collusion unless there is evidence to the contrary."[23] There is no evidence—not even a suggestion—of fraud or collusion in this instance; to the contrary, the parties and their counsel remained adversarial (though professional) in their pre-suit communications, litigation of the pleadings, and positions during mediation. Moreover, this settlement resolves the FLSA claims at issue by providing direct and substantial compensation for the allegedly unpaid overtime at issue. As such, it cannot possibly represent a fraudulent or collusive attempt to avoid the requirements of the FLSA or provide the employer an excuse from the statutory requirements.[24, 25]

Furthermore, the parties engaged in formal mediation facilitated by an experienced and respected FLSA collective action mediator, Lynn Cohn.[26] "[T]he participation of an independent

---

[21] *See Clem v. KeyBank, N.A.,* S.D.N.Y. No. 13 Civ. 789 (gross average per capita amount of $2,066); *Puglisi v. TD Bank, N.A.,* S.D.N.Y. No. 13 Civ. 627 (gross average per capita amount of $4,304).

[22] *See Kampfer v. Fifth Third Bank,* N.D. Ohio No. 3:14-cv-02849 (approving settlement with net per capita recovery of $2,441); *Mende v. Wildcat,* S.D. Ohio No. 2:17-cv-286 (approving settlement with net per capita recovery of $2,910).

[23] *IUE-CWA v. Gen. Motors Corp.,* 238 F.R.D. 583, 598 (E.D. Mich. 2006).

[24] *See Kritzer v. Safelite Solutions, LLC,* 2012 U.S. Dist. 74994, at *17-18 (S.D. Ohio May 30, 21012) (district court's inquiry is to ensure that "the parties are not, via settlement of the plaintiffs' claim, negotiating around the clear FLSA requirements of … overtime").

[25] It must also be noted that BrightEdge has represented that, sometime after plaintiffs' counsel sent a pre-suit letter raising the commission-inclusion issue, the company voluntarily changed its practices to include commissions when calculating the regular rate for overtime purposes. *See* Ex. 3, Lead Counsel's Declaration at ¶9. Thus, there is no risk that the employer has somehow excused itself from the FLSA's requirements by way of settlement.

[26] *See generally* **Exhibit 4**, CV of Lynn Cohn.

mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties."[27]

### 2. The litigation is complex and would be expensive and likely last for years.

"FLSA claims typically involved complex mixed questions of fact and law [that] must be resolved in light of volumes of legislative history and over [eight] decades of legal interpretation and administrative rulings," such that numerous depositions, substantial written discovery, and extensive motion practice would have resulted from continued litigation.[28] That was particularly true here where there were threshold issues regarding the collective that could be certified, as well as two claims—one regarding the regular rate calculation and the other based on off-the-clock allegations. This case would have involved dozens of depositions and extensive briefing on a large number of pre-trial motions.

### 3. The production of wage-and-hour information and the narratives by the four lead plaintiffs were sufficient discovery to inform a decision on settlement of the case.

BrightEdge produced three data-dense spreadsheets with comprehensive information about the tenures, compensation, commissions, electronic "time-cards," and other wage-and-hour data regarding every member of the 230-person proposed FLSA collective. This data was adequate for plaintiffs to calculate damages and evaluate important elements of proof regarding some of the disputed factual issues. Moreover, plaintiffs' counsel conducted several extensive interviews with each of the four lead plaintiffs—which were then digested into narratives submitted in their confidential mediation statement to Ms. Cohn—which provided material and valuable insight into the company, work experiences of SDRs, as well as the risks, strengths, and weaknesses, of making their claims on individual and class-wide bases. Thus, plaintiffs and their counsel were well informed when negotiating this settlement. In counsel's professional opinion, which is informed

---

[27] *Hainey v. Parrot,* 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007).

[28] *Barrentine v. Ark-Best Freight Sys., Inc.,* 450 U.S. 778, 743 (1981); *see also Gentrup v. Renovo Servs., LLC,* 2011 WL 2532922, at *4 (S.D. Ohio June 24, 2011) (wage and hour cases are "frequently complex matters").

7

by years of experience litigating FLSA cases, this is a fair and reasonable settlement that should be approved.

### 4. Both parties faced major risks on the merits, as well as on standing, certification, and the measure of damages.

As set forth in Section II(B) above, both parties faced substantial risk on virtually every important question in the case, from the extent of the class and the class period to the calculation of damages at a half-time or time-and-a-half rate. As such, "the certainty and finality that comes with settlement also weighs in favor of a ruling approving the agreement."[29]

### 5. There is a strong public interest in settlement of these claims.

"[I]f the settlement reflects a reasonable compromise over issues actually disputed, such as FLSA coverage … a court may approve a settlement 'to promote the policy of encouraging settlement of litigation.'"[30] Here, the timely and comprehensive settlement of the claims of those SDRs in Ohio and the other three states covering the longest FLSA limitations period at a substantial per capita gross and net recovery strongly weighs in favor of settlement approval. Indeed, in the absence of such approval, continued litigation might result in the reduction in class size, class period, merits of the claims, certification of the claims, and calculation of damages. What would be certain, however, is that any recovery would be delayed by years of litigation and possible appeals—and attorney's fees and litigation costs for both parties would skyrocket. Settlement is in the interests of the parties, the Court, and the public.

## III. THE NOTICE SHOULD BE APPROVED

The proposed *Settlement Notice* submitted with this motion appropriately advises the members of the settlement collective of the terms of the settlement, their opportunity to participate in it, the allocation formula, the scope of the release, and the requested fees and costs by counsel. Thus, it "fairly and adequately describes the terms of the Settlement including the release of claims

---

[29] *Castillo,* 2015 WL 13021899, at *5; *accord Rotuna,* 2010 WL 2490989, at *6; *Crawford,* 2008 WL 472449, at *9.
[30] *Crawford,* 2008 WL 4724499, at *9 (quoting *Lynn's Food Stores,* 769 F.2d at 1353).
8

and the form and manner of payments."[31]  BrightEdge has sufficient detail about the names, addresses, and contact information of each member of the settlement collective that the Claims Administrator should be able to provide notice to each.

## IV. THE ATTORNEY'S FEES & COSTS SHOULD BE APPROVED

Plaintiff's counsel requests a fee equal to one-third of the common fund; *i.e.,* a fee of $241,666.67. They also seek $5,285.35 in reimbursement of their own expenses ($402 filing fee, $20.85 in teleconference hosting expenses, and $4,862.50 in mediator fees).[32]  Finally, they seek up to $10,000.00 in costs of administering the settlement, which is the quote (plus limited anticipated potential overages) received from CPT Group, a reputable settlement claims administrator jointly chosen by the parties—after soliciting bids from five competitors.[33]  Any approved settlement administration fees that are not actually incurred will be reallocated on a pro-rata basis to collective action members who negotiate their settlement checks.

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and the costs of the action."[34]  In *Fegley v. Higgins*,[35] the Sixth Circuit held that the FLSA's mandatory attorney fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus encourage[s] the vindication of congressionally identified policies and rights."

The *Settlement Agreement* authorizes plaintiff's counsel to seek an award of a fee equal to one-third of the common fund. "In FLSA collective actions in Ohio, courts have almost uniformly

---

[31] *Gentrup,* 2011 WL 2532922, at *3.

[32] *See* Ex. 3, Lead Counsel's Decl. at ¶7.

[33] *Id.* at ¶8.

[34] 29 U.S.C. § 216(b).

[35] 19 F.3d 1126, 1134 (6th Cir. 1994) (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984)), *cert. denied*, 513 U.S. 875 (1994).

9

awarded attorneys' fees that constituted one-third of the fund."[36] In the last two years, this Court has approved a one-third fee in no less than five FLSA wage and hour cases.[37] Given the risks inherent in the litigation and the excellent results achieved, this Court should approve the one-third fee request made without objection here.

To assist the Court in deciding the reasonableness of this request, the Sixth Circuit has identified the following factors: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent-fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides.[38] Here, each factor weighs in favor of approval of the fee.

As to the first factor, as set forth in Section II(C), this is a non-reversionary settlement in which each participant will receive a direct cash payment representing a substantial recovery on his or her unpaid overtime claims. Thus, counsel's work resulted in "relatively early relief to class

---

[36] *Carr v. Bob Evans Farms, Inc.*, No. 1:17-cv-1875, 2018 WL 7508650 at *4 (N.D. Ohio July 27, 2018); *see, e.g., Barnes v. Winking Lizard, Inc.,* No. 1:18-cv-952, 2019 WL 1614822 at *6 (N.D. Ohio Mar. 26, 2019) ("the attorney's fee amount of one third of the settlement fund is reasonable in this case and is well within the range of multipliers approved by Ohio district courts in similar class and collective actions"); *Swigart v. Fifth Third Bank,* No. 1:11-cv-88, 2014 WL 3447947 at *6 (S.D. Ohio July 11, 2014) (approving an attorney's fees award of $1,320,00.00, or 33% of the settlement fund, where class counsel's lodestar was $512,885.00); *Mullins v. Data Management*, No. 1:20-cv-214, 2021 WL 2820560 at *7 (S.D. Ohio June 6, 2021) (approving an attorneys' fee award of $300,000.00, or 33% of the settlement fund, where class counsel's lodestar was $109,000.00); *Castillo v. Morales, Inc.*, No. 2:12-cv-650, WL 13021899 at *7 (S.D. Ohio Dec. 22, 2015) (approving $660,000.000 in attorneys' fees, or 30% of the settlement fund, where class counsel's lodestar was $263,479.00).

[37] Final Order Approving Settlement, *Shanahan v. KeyBank,* No. 1:19-CV-2477 at ¶27 (N.D. Ohio Mar. 16, 2021) ("[t]he Court approves the requested attorneys' fees of one-third of the Global Settlement Fund and $5,655 in out-of-pocket litigation costs as reasonable"); Order Approving Settlement and Dismissing Case with Prejudice, *Hardimon v. nVent Thermal LLC, et al.*, No. 1:20-CV-00246 at ¶6 (N.D. Ohio Sept. 7, 2021) (approving $191,666.67 in attorney's fees, plus expenses, where the settlement fund totaled $575,000.00); Order Granting Joint Motion for Approval of Collective Action Settlement and Dismissal with Prejudice, *Slaughter v. The Lincoln Electric Co.,* No. 1:18-CV-02705 at ¶14 (N.D. Ohio Dec. 30, 2020) (approving $100,000.00 in attorneys' fees, plus $20,531.94 in expenses, where the settlement fund totaled $300,000); Order of Dismissal and Approving Settlement*, Jones v. The Lubrizol Corp.,* No. 1:18-cv-00011 at ¶17 (N.D. Ohio Dec. 3, 2020) (approving $100,000.00 in attorneys' fees, plus expenses, where the settlement fund totaled $300,000.00); Order of Dismissal and Approving Settlement*, Edwards v. Sun America LLC*, No. 5:19-CV-00530 at ¶13 (N.D. Ohio Dec. 5, 2019) (approving $54,000.00 in attorneys' fees where the settlement fund totaled $157,000.00).

[38] *See Bowling v. Pfizer,* 102 F.3d 777, 780 (6th Cir. 1996).

members, and it eliminated the additional risks the parties would otherwise bear if this litigation were to continue."[39]

As to the second factor, plaintiff's counsel's lodestar is about $180,000 as of this writing and will certainly increase as they shepherd the settlement through approval and claims administration.[40] The requested fee is, at most, a 1.34 multiplier of the lodestar, which is well within—and most often below—the multipliers approved in other FLSA cases.[41]

As to the third factor, counsel took this case on a contingency-fee basis and advanced all costs, thus assuming substantial risk in pursuing this case and investing significant amounts of time, money, and effort. In *Gascho v. Global Fitness Holdings, Inc.,* the Sixth Circuit recognized that class counsel should be compensated for both the work performed in litigation and the "risk of undertaking representation on a contingent basis, especially considering the complexity of [the] action."[42] Given the inherent complexity of wage and hour collective actions and the substantial public interest in awarding the attorneys who bring them, an award of one-third of the settlement fund plus case-related expenses is appropriate.

As to the final three factors, the FLSA is a remedial statute designed to protect the wages of workers, such that "society has a stake in rewarding the efforts of attorneys who bring wage and hour cases, as these are frequently complex matters."[43] Counsel took on this matter to protect the rights of SDRs, litigating a complex case against a sophisticated corporate defendant that employed some of the top wage-and-hour lawyers from a highly-respected firm to defend it.

Thus, all factors weigh strongly in favor of approving the fee request in this instance.

---

[39] *Swigart v. Fifth Third Bank,* 2014 U.S. Dist. LEXIS 94450, at *16 (S.D. Ohio July 11, 2014).

[40] *See* Ex. 3, Lead Counsel's Decl. at ¶6.

[41] *See* fn. 34-35 above; *see also Barnes v. Cincinnati,* 401 F.3d 729, 745 (6th Cir. 2005) (affirming 1.75 multiplier).

[42] 822 F.3d 269 (6th Cir. 2016).

[43] *Gentrup,* 2011 U.S. Dist. LEXIS 67887, at *4.

## V. THE SERVICE AWARDS SHOULD BE APPROVED

Under the *Settlement Agreement,* each of the four named plaintiffs who brought this case on behalf of all other SDRs is entitled to a $1,000 service award. "Numerous courts have authorized incentive awards [as] efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class."[44] Here, each of the four plaintiffs participated in several extensive interviews with counsel in order to formulate the complaint and mediation materials, without which counsel would have lacked the necessary factual and narrative understanding to successfully prosecute the case, respond to assertions by BrightEdge during the mediation, and navigate to a favorable resolution. The requested service payments are proportional to the actual participation and is a fraction of those approved by other courts.[45]

## VI. CONCLUSION

The Court should issue one-step approval of this FLSA collective action settlement as follows:

1. Enter Final Approval of the FLSA Settlement;
2. Appoint CPT Group as Settlement Administrator;
3. Order Notice to Issue;
4. Approve Attorney's Fee of $241,666.67 to Merriman Legando Williams & Klang;
5. Approve Litigation Costs of $5,285.35 to Merriman Legando Williams & Klang;
6. Approve Administration Costs of up to $10,000 to CPT Group;
7. Approve Service Awards of $1,000 each to Adam Keyse, Adam Mitro, Charles Berg, and Drew Perrin;
8. Enter Final Judgment and Dismissal of the case with prejudice.

---

[44] *Hadix v. Johnson,* 322 F.3d 895, 897 (6th Cir. 2003); accord *Dillworth v. Case Farms Processing, Inc.,* 2010 WL 776933, at *7 (N.D. Ohio March 8, 2010); see also *Sand v. Greenberg,* 2011 WL 784602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving award in FLSA case because plaintiffs "took risks by putting their names on this lawsuit," including that of "blacklisting").

[45] *Cf. In re Polyurethane Foam Antitrust Litig.,* 135 F. Supp. 3d 679, 696 (N.D. Ohio 2015) ($35,000 service awards); *Johnson v. Midwest Logistics Sys., Ltd.,* 2013 WL 229588, at *5 (S.D. Ohio May 24, 2013) ($12,500 service award).

A *Stipulation and Proposed Order of Dismissal* entering this relief is being submitted with this motion.

                                    Respectfully submitted,

                                    s/ Drew Legando
                                    Drew Legando (0084209)
                                    Tom Merriman (0040906)
                                    Edward S. Jerse (0013155)
                                    MERRIMAN LEGANDO WILLIAMS & KLANG, LLC
                                    1360 West 9th Street, Suite 200
                                    Cleveland, Ohio 44113
                                    T. (216) 522-9000
                                    F. (216) 522-9007
                                    E. drew@merrimanlegal.com
                                        tom@merrimanlegal.com
                                        edjerse@merrimanlegal.com

                                    *Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

    This motion was filed on the Court's ECF System on February 17, 2022, through which it will be served on counsel of record.

                                          s/ Drew Legando
                                          Drew Legando (0084209)